[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Northeast Waste Systems, Inc. commenced this action against the defendant Connecticut Abatement Technologies, Inc. The first count of the complaint claims the defendant breached its contract for services rendered by the plaintiff. The second count seeks to recover the reasonable value of the services provided. The total sum claimed is $100,496.00. CT Page 10902
Automated Salvage Transport, Inc. was a subsidiary of the plaintiff.
The plaintiff is in the business of supplying containers, dumpsters, equipment and trucks incidental to the removal and disposal of construction debris. The defendant was in the business of removing construction debris and asbestos material from buildings in the course of their demolition. The defendant was affiliated with Abcon Environmental and its address was 500 Strong Street, East Haven, Connecticut. The principal in that entity was Mark Sergi who lived at that address. Abcon was a subcontractor for the defendant for asbestos removal from the project involved in this dispute.
Michael Couden was the operations manager for the plaintiff in 1997 when the plaintiff entered into an oral contract to provide services for the defendant. The defendant had been engaged as a subcontractor to remove construction debris and asbestos from the Malley building which was being demolished in New Haven, Connecticut. Bruce Black, the Director of Operations for the defendant, negotiated the contract with Michael Couden. A party to the negotiated contract was Mark Sergi who was affiliated with Bruce Black and the principals in the defendant corporation. The type of material being removed was construction debris, sheet rock, pipe insulation and asbestos materials. The asbestos material was designated as either fryable, which was composed of pulverized material, or nonfryable, which consisted of hard material such as roofing material or tile. The fryable material had to be packaged and sealed in a plastic liner in a 40 yard container, and the nonfryable could be dumped into a 30 yard container. The cost differed for the type of material placed in the containers. The non-asbestos material could be disposed of at a site located at 19 Wheeler Street in New Haven, Connecticut, and the asbestos material had to be transported to Morristown, Pennsylvania.
The oral agreement reached on or about September 10, 1997 by the authorized representatives of each of the parties was as follows:
$100.00 per load for metal material
$400.00 per load for clean material
$1250 per load for nonfryable material
$1750.00 per load for fryable material
A later change added an additional charge of $200.00 for weekends and $50.00 for overnight usage.
The oral agreement for the rates to be charged was then approved by the CT Page 10903 parties to this action. This work performed by each of the corporate entities took place between September 10, 1997 and October 28, 1997. The plaintiff's responsibility was to remove the debris from the job site. The general contractor on the project for the City of New Haven was liable for liquidated damages if the work was not completed on time. The defendant was then required to remove the construction debris expeditiously, and the plaintiff in turn was compelled to have containers available on a 24 hour basis as well as weekends. The containers were brought to the job site when a call was received from the defendant at the plaintiff's facility in Wallingford, Connecticut.
At the job site the defendant was required by law to put plastic liners in the containers for asbestos material, and the defendant was then required to seal the load and place three labels on each container to show the generator, contractor, transporters, and the disposal landfill. A manifest for the loads was required to be signed by the defendant's representatives. It was common practice at that time that Bruce Black or Mark Sergi would authorize Michael Couden to sign the manifest when no representative of the defendant was present on the job site. The defendant was intent on removing the debris from the job site as fast as possible. Both the defendant and the general contractor each kept daily logs of the number of dumpster that came to the site and when they departed. The asbestos material after it was loaded in the dumpster was transported to the Wallingford site, and then it was transported by R. J. Guerra, a subcontractor of the plaintiff, to the disposal site in Pennsylvania. On some occasions R. J. Guerra would pick up the containers on the Malley job site to transport the material for disposal. Each container had backup paperwork in addition to the manifest and it included work orders, weight tickets, invoices and receiving slips from the disposal site. Some of the records were not properly executed because they relied on truck drivers or other employees who were not diligent regarding the record keeping. The paperwork however required that asbestos material had to show the chain of custody from the job site to the disposal landfill. Some containers were delayed in being transported to the Pennsylvania landfill and those containers were kept at the site owned by the plaintiff in Wallingford.
When the defendant commenced its work for the general contractor the defendant tried to dispose of the sheetrock as regular construction debris. However, the defendant was made aware that the asbestos compound used on the sheetrock required it to be disposed of by the more expensive procedure as asbestos material. Thereafter the defendant incurred more expense than it had originally anticipated for the services of the plaintiff. The defendant originally estimated the original cost of disposal of sheet rock for $70,000.00 and the change in designation of that material as asbestos doubled the cost of its disposal. CT Page 10904
Kenneth Vallera, the assistant manager for the plaintiff during this project, supervised the operation. He was familiar with the agreement and he approved the negotiated prices orally agreed to by representatives of each of the parties. He also testified that as the work progressed an additional charge of $200.00 was greed by the parties for weekend and overnight operation of the plaintiff's business to expedite the completion of the project. He also testified some billing errors on the job entitled the defendant to a credit of $9900.00.
Alan Peterman, the collection manager for the plaintiff, received a payment of $60,000.00 from the defendant, and a dispute arose over the balance due. He discovered additional invoices that had not been billed. He also made adjustments for taxes and credits due the defendant.
Bruce Black, the director of operations for the defendant, testified an oral agreement was negotiated by him and Michael Couden on September 10, 1997. He also stated that Mark Sergi was working with the defendant as a principal in Abcon, Inc. He disputed the charges claimed by the plaintiff for the containers required for the various types of construction material. He also disputes the number of containers provided by the plaintiff, and therefore contends the defendant was over billed. Mr. Black also claims the plaintiff failed to maintain proper paper work for the project, and also failed to transport the containers in a timely manner to the disposal sites. The conclusions reached by Mr. Black were unsupported by any documents, logs or records maintained by the defendant or the general contractor for the project.
The plaintiff claims that after the $60,000.00 payment and the credit to the defendant for $9900.00, the balance due was $90,596.00. Since the plaintiff received $52,000.00 from the other liable parties, the net sum due to the plaintiff was $38,596.00. The plaintiff also claims interest on the sum due.
The evidence established the plaintiff did remove all the construction debris including the asbestos material from the job site. The fact that the plaintiff's employees did not maintain completely accurate records does not relieve the defendant from its responsibility to pay the plaintiff in accordance with the agreed contractual terms. The parties did have an enforceable oral contract.
The defendant argues that the amount owed to the plaintiff was disputed and that after the defendant paid $60,000.00, the balance remaining due based upon the invoices left the sum of $78,278.00 claimed due. Then after deducting improper charges by the plaintiff, the sum of $59,400.00 was the net amount the plaintiff could claim for its services. The CT Page 10905 defendant then argues it did not owe that sum to the plaintiff because the plaintiff did not properly dispose of the asbestos material, and it failed to maintain proper documentation to support the plaintiff's claims. The defendant then concludes the payment of $60,000.00 which it paid was reasonable compensation for the benefits it received.
This court concludes the defendant is owed the sum of $35,596.00 on the contract. Interest on that sum pursuant to § 37-3a of the Conn. General Statues at the rate of ten percent a year is ordered from December 1, 1998 to date of payment.
Judgment shall enter for the plaintiff for the above sums.
Howard F. Zoarski Judge Trial Referee